# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL A. ALCOX,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>JAMES HARTLEY,<br><br>　　　　　Respondent.<br>_____/ | 1:11-cv-00850-LJO-SMS (HC)<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On May 25, 2011, Petitioner filed the instant petition for writ of habeas corpus. He is currently incarcerated at the Avenal State Prison serving a sentence of fifteen years to life for his 1987 convictions of first degree murder with use of firearm, robbery and burglary. (See Petition at 2.) Petitioner contends that he has a liberty interest in his minimum eligible parole date and the retroactive application of Marsy's law violates the Ex Post Facto Clause.

## DISCUSSION

A.　Preliminary Review of Petition

Rule 4 of the Rules Governing Section 2254 Cases provides in pertinent part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

The Advisory Committee Notes to Rule 8 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. See Herbst v. Cook, 260 F.3d 1039 (9th Cir.2001). A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

B.     Failure to State a Cognizable Claim

To the extent Petitioner takes issue with the policies, practices and procedures of the Board as applied in its decision to deny him parole, this claim is foreclosed by the Supreme Court's decision in Swarthout v. Cooke, ___ U.S.___, 131 S.Ct. 859, 2011 WL 197627 (2011). In Swarthout, the Supreme Court held that the federal habeas court's inquiry into whether a prisoner who has been denied parole received due process is limited to determining whether the prisoner "was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." Id., *citing*, Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 16 (1979).  Petitioner does not contend he was denied these procedural due process guarantees.  Rather, it appears Petitioner contends he has a liberty interest under the Due Process Clause in the application of his good and work time credits used to establish his minimum eligibility release.  Petitioner is mistaken.  A life prisoner's "Minimum Eligible Parole Date," (MEPD) is the "earliest date on which an Indeterminate Sentence Law or life prisoner may be legally released on parole." See Cal. Code Regs., tit. 15, § 3000; see also Cal. Code Regs., tit. 15, § 2000(b)(67).  However, the actual length a prisoner must serve prior to release is determined by the Board of Parole.  The prisoner's MEPD determines the timing of the prisoner's initial suitability hearing-one year prior to the MEPD.  See e.g. Alley v. Carey, 2010 WL 4386827 1 6 (9th Cir. Nov. 5, 2010) (unpublished) (good time credit affects minimum eligible parole date).

California Penal Code section 190(a) mandates the CDCR apply any good behavior credits against the minimum term for purposes of establishing the MEPD.  Those credits need not be reapplied to the actual term it eventually sets if, and when, the prisoner is determined eligible

for parole. In re Dayan, 231 Cal.App.3d 184, 188 (1991); see also Cal. Code Regs., tit. 15, § 2400 ("The department's decisions [regarding credit] do not affect the Board's decision concerning postconviction credit pursuant to these rules."). It is theoretically possible that if a prisoner is determined eligible for parole at the earliest possible time, credits may be of use in actually reducing the amount of time a prisoner served prior to the initial parole suitability hearing being set. See People v. Rowland, 134 Cal.App.3d 1, 13-14 (1982). However, the determination of Petitioner's actual release is dependent upon the Board of Parole finding him suitable for release, irrespective of the amount of time served. Cal. Pen. Code § 3041(b); Cal. Code Regs., tit. 15, § 2281(a).

Therefore, the credits that Petitioner is allowed to earn by statute as a life prisoner do not have a direct impact upon the amount of time Petitioner must actually serve unless and until the Board of Parole determines he is suitable for release. Petitioner will receive parole consideration hearing at intervals set by the Board and the credits do not direct impact the duration of Petitioner's sentence. Cal. Pen. Code §§ 3041, 3041.5.

Petitioner's second claim for relief, that the Board violated the Ex Post Facto Clause by invoking Marsy's Law, is without merit. On November 4, 2008, California voters passed Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which, *inter alia*, altered the frequency of parole hearings for prisoners not found suitable for parole. Prior to the passage of Proposition 9, in the event a prisoner was determined unsuitable for parole, a subsequent parole hearing would be held annually thereafter. Cal Penal Code § 3041.5(b)(2) (2008). If the parole board determined it was not reasonable to expect parole would be granted within the next year, it could defer rehearing for two years. Id. If the prisoner was convicted of murder and it was not reasonable to expect he/she would be granted parole within the year, the board could select a rehearing term of up to five years. Id. Proposition 9 changed the frequency of subsequent parole hearings as follows:

> The board shall schedule the next hearing, after considering the views and interests of the victim, as follows:
>
> (A) Fifteen years after any hearing at which parole is denied, unless the board finds by clear and convincing evidence that the criteria relevant to the setting of parole

1  release dates enumerated in subdivision (a) of Section 3041 are such that consideration of
2  the public and victim's safety does not require a more lengthy period of incarceration for
   the prisoner than 10 additional years.

3         (B) Ten years after any hearing at which parole is denied, unless the board finds
4  by clear and convincing evidence that . . . consideration of the public and victim's safety
   does not require a more lengthy period of incarceration for the prisoner than seven
   additional years.
5
6         (C) Three years, five years, or seven years after any hearing at which parole is
   denied, because . . . consideration of the public and victim's safety requires a more
   lengthy period of incarceration for the prisoner, but does not require a more lengthy
7  period of incarceration for the prisoner than seven additional years.

8  Cal. Penal Code § 3041.5(b)(3) (November 4, 2008).

9         For a statute to violate the Ex Post Facto Clause, it must: (a) punish as a crime an act

10 previously committed, which was innocent when done; (b) make more burdensome the

11 punishment for a crime, after its commission; or (c) deprive one charged with crime of any

12 defense available according to law at the time when the act was committed. See Collins v.

13 Youngblood, 497 U.S. 37, 42 (1990); Beazell v. Ohio, 269 U.S. 167, 169–70 (1925).  In this

14 context, a retroactive procedural change violates the Ex Post Facto Clause only if it "creates a

15 significant risk of prolonging [an inmate's] incarceration." Garner v. Jones, 529 U.S. 244, 251

16 (2000). A "speculative" or "attenuated possibility" of prolonging incarceration is insufficient to

17 establish a violation of the Ex Post Facto Clause. Cal. Dep't of Corr. v. Morales, 514 U.S. 499,

18 509 (1995)

19        In Morales, 514 U.S. at 509, the Supreme Court expressly rejected an Ex Post Facto

20 challenge to a California statute that reduced the frequency of parole reconsideration hearings for

21 prisoners convicted of multiple murders. Finding that the law "did not modify the statutory

22 punishment imposed for any particular offenses," "alter the standards for determining either the

23 initial date of parole eligibility or an inmate's suitability for parole," or "change the basic

24 structure of California's parole law," the Supreme Court held that retroactive application of the

25 statute did not create "a sufficient risk of increasing the measure of punishment attached to the

26 covered crimes." See also Garner, 529 U.S. at 250, *citing* Morales, 514 U.S. 499.  Similarly,

27 Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," does not violate the Ex

28 Post Facto Clause because its application does not modify the statutory punishment imposed for

petitioner's commitment offense, nor does it alter the formula for earning sentence reduction credits or the standards for determining Petitioner's initial parole eligibility date or his suitability for parole. Further, it does not change the basic structure of California's parole law since the Board still must consider the same factors in determining parole suitability. See Cal.Penal Code § 3041(b) (as amended).

In addition, the Court notes that Penal Code section 3041.5 has been amended several times to allow for longer periods of time between parole suitability hearings, and Ex Post Facto challenges to those amendments have all been rejected. See, e.g., Morales, 514 U.S. at 509 (1981 amendment to section 3041.5, which increased maximum deferral period of parole suitability hearings to five years did not violate the Ex Post Facto Clause because it simply altered the method of setting a parole release date and did not create a meaningful "risk of increasing the measure of punishment attached to the covered crimes"); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir.1989) (not a violation of the Ex Post Facto Clause to apply section 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to the 1977 implementation of California's Determinate Sentence Law); see also Garner v. Jones, 529 U.S. 244, 249 (2000) (upholding Georgia's change in the frequency of parole hearings for prisoners serving life sentences, from three to eight years); Gilman v. Schwarzenegger, 638 F.3d 1101 (2011) (reversing the district court's order granting Plaintiff's motion for preliminary injunction because it was unlikely that plaintiffs would succeed on the merits of their Ex Post Facto Clause challenge to Marsy's law).  For these reasons, Petitioner's challenge to Proposition 9, "Marsy's Law," fails.

Furthermore, the Court takes judicial notice of the docket and orders in the class action Gilman v. Fisher, 2:05-cv-00830 LKK GGH, which is pending in the Sacramento Division of this Court, including the order granting motion for class certification filed on March 4, 2009 (Doc. 182, 9:7–15), which indicates that the Gilman class is made up of California state prisoners who: 1) have been sentenced to a term that includes life; 2) are serving sentences that include the possibility of parole; 3) are eligible for parole; and 4) have been denied parole on one or more occasions. The docket further reflects that the Ninth Circuit affirmed the order certifying the

class. (Docs. 257, 258.) The Court also takes judicial notice of the order of March 4, 2009, in which the court described the case as including challenges to Proposition 9's amendments to Cal. Pen.Code § 3041.5 based on the Ex Post Facto Clause, and a request for injunctive and declaratory relief against implementation of the changes. (Doc. 182, 5–6.)

The relief sought by Petitioner concerns in part the future scheduling of Petitioner's next suitability hearing and necessarily implies the invalidation of state procedures used to deny parole suitability, matters removed from the fact or duration of confinement. Such types of claims have been held to be cognizable under 42 U.S.C. § 1983 as claims concerning conditions of confinement. Wilkinson v. Dotson, 544 U.S. 74, 82 (2005). Thus, they may fall outside the core of habeas corpus relief. See Preiser v. Rodriguez, 411 U.S. 475, 485-86 (1973); Nelson v. Campbell, 541 U.S. 637, 643 (2004); Muhammad v. Close, 540 U.S. 749, 750 (2004).

Further, the relief Petitioner requests overlaps with the relief requested in the Gilman class action. A plaintiff who is a member of a class action for equitable relief from prison conditions may not maintain an individual suit for equitable relief concerning the same subject matter. Crawford v. Bell, 599 F.2d 890, 891–92 (9th Cir.1979). It is contrary to the efficient and orderly administration of justice for a court to proceed with an action that would possibly conflict with or interfere with the determination of relief in another pending action, which is proceeding and in which the class has been certified.

Here, Petitioner's allegations reflect that he qualifies as a member of the class in Gilman. The court in Gilman has jurisdiction over the same subject matter and may grant the same relief. A court has inherent power to control its docket and the disposition of its cases with economy of time and effort for both the court and the parties. Landis v. North American Co., 299 U.S. 248, 254-255 (1936); Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir.1992). In the exercise of its inherent discretion, this Court concludes that dismissal of Petitioner's ex post facto claim in this action is appropriate and necessary to avoid interference with the orderly administration of justice. C.f. Crawford v. Bell, 599 F.2d 890, 892-93; see Bryant v. Haviland, 2011 WL 23064, *2–*5 (E.D.Cal. Jan.4, 2011).

Therefore, the instant petition does not present cognizable claims for relief, and no

cognizable claim could be raised if leave to amend were granted.  Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971). The petition must be dismissed.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DISMISSED because the petition does not allege grounds that would entitle Petitioner to habeas corpus relief.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after service of the Findings and Recommendation, Petitioner may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 9, 2011**               /s/ Sandra M. Snyder
                                      UNITED STATES MAGISTRATE JUDGE